1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                       FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   DONALD BOYCE,                              No.  2:14-cv-1743 KJM KJN P

12              Plaintiff,

13        v.                                    ORDER

14   MICHAEL FOX, et al.,

15              Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel.  He filed a civil rights action

19   pursuant to 42 U.S.C. § 1983, which proceeds on his February 5, 2015 first amended complaint.

20   On July 6, 2015, defendants Fox, Kim, and Ogbodo filed a motion to dismiss for failure to state a

21   claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and seek qualified immunity.  On

22   August 17, 2015, defendant Wong joined in the motion to dismiss.  After receiving an extension

23   of time, plaintiff filed an opposition, and defendants filed a reply.  For the following reasons, the

24   undersigned partially grants defendants' motion to dismiss, but grants plaintiff leave to file a

25   second amended complaint, and grants plaintiff's motion for appointment of counsel.

26   II.  Legal Standard for Motion to Dismiss

27        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

28   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

(2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

interpretation of a pro se complaint may not supply essential elements of the claim that were not

pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III.  Plaintiff's Amended Complaint

Plaintiff alleges that despite having no prior history of back pain or numbness, and despite

exhibiting "obvious" symptoms of Coccidiomycosis or "Valley Fever," defendants R.N. Ogbodo,

Dr. Wong, treating physician, Dr. Fox, Chief Physician, and Dr. Kim, Chief Medical Officer,

delayed and denied adequate medical care for plaintiff's serious medical needs, subjecting him to

1    pain and permanent physical injuries.

2            Plaintiff alleges that while he was housed at Deuel Vocational Institution ("DVI"), he was

3    obviously suffering from "Valley Fever," a serious medical need that is life threatening and that

4    requires immediate treatment.  (ECF No. 15 at 5.)  Plaintiff contends that on or about January 17,

5    2012, he started having symptoms of Valley Fever, and despite having such symptoms, defendant

6    Ogbodo treated plaintiff with a hydrocortisone shot for the back pain, even though plaintiff was

7    still mobility impaired.  (ECF No. 15 at 4.)  After putting in another sick call slip, complaining of

8    excruciating pain in his lower back with high fever and chills, plaintiff was again given two more

9    hydrocortisone shots and told he would be seeing the doctor.  Plaintiff states he "never [saw] a

10   doctor for a while and was not given any medication."  (ECF No. 15 at 4.)  Subsequently, x-rays

11   were taken, but the results were lost, so another x-ray would be scheduled.  In the meantime,

12   plaintiff alleges he was enduring unbearable pain that prevented him from sleeping lying down.

13   Plaintiff claims he did not have a decent night's sleep from January to May 2012, while he was

14   housed at DVI.  Plaintiff alleges that it was 60 days from his initial symptoms until he was told he

15   would see a doctor, but he was not seen until 60 days thereafter, at which point he was "only

16   questioned."  (ECF No. 15 at 5.)  Plaintiff's requests for an MRI and other examinations were

17   ignored.  Plaintiff also contends that early x-ray images would have shown the "significant bone

18   destruction."  (ECF No. 15 at 6-7.)  Plaintiff further contends the x-rays show "solids, such as

19   bone cavity."  (ECF No. 15 at 7.)

20           Plaintiff argues that defendant M. Kim should have intervened and ordered an MRI or CT

21   Scan rather than simply denying plaintiff's appeal without further investigation.  See Herrera v.

22   Hall, 2010 WL 2791586, at * 4 (E.D. Cal. 2010) ("if there is an ongoing constitutional violation

23   and the appeals coordinator had the authority and opportunity to prevent the ongoing violation, a

24   plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an

25   impending violation and failed to prevent it.")  Plaintiff states that he requested an MRI from

26   defendants Wong and Fox, but both denied his request, despite his "obvious" symptoms of Valley

27   Fever.  Plaintiff contends that the illness symptoms of Valley Fever are "so obvious that even a

28   layperson can recognize the necessity of its treatment."  (ECF No. 15 at 5.)

1    Plaintiff claims that he has suffered "tremendous permanent physical disabilities," and is

2    "in a wheelchair and sometimes assisted by a walker."  (ECF No. 15 at 10.)

3    IV.  <u>Defendants' Motion to Dismiss</u>

4    Defendants contend that plaintiff fails to allege facts demonstrating that each defendant

5    was aware that a substantial risk of harm existed and, despite such knowledge, acted in

6    contravention of such risk.  For example, defendants argue that plaintiff complained of back pain

7    and defendant Ogbodo gave plaintiff a hydrocortisone shot to alleviate the pain.  After the

8    medication wore off, plaintiff presented with complaints of back pain, fever, and chills, and he

9    was provided at least two more hydrocortisone shots to alleviate his back pain.  Defendants

10   contend that a mere difference of opinion as to proper medical treatment or misdiagnosis fails to

11   demonstrate deliberate indifference.

12   Further, defendants argue that the remaining defendants were solely involved in

13   addressing plaintiff's administrative grievances and therefore could not have deprived plaintiff of

14   a federal constitutional right.  In the alternative, defendants argue that plaintiff's allegations fail to

15   show that each defendant knew, yet failed to prevent, an ongoing constitutional violation by

16   denying plaintiff's administrative appeals.  Rather, defendants contend that plaintiff's allegations

17   demonstrate that he simply disagrees with the denial of the appeals, and that defendants Wong

18   and Fox disagreed with plaintiff's desired course of treatment.  (ECF No. 21-1 at 9.)

19   Finally, defendants contend that they are entitled to qualified immunity because plaintiff

20   cannot show that defendants violated any constitutional right.  (ECF No. 21-1 at 10.)

21   In his unverified opposition, plaintiff claims that he did not initially present with just back

22   pain, but on January 17, 2012, had an onset of severe back pain and fever, without a history of

23   back issues, and was prescribed acetaminophen for the fever.  Plaintiff now states that on

24   February 15, 2012, he was prescribed a Levalbuterol inhaler for asthma, despite having no history

25   of asthma.  (ECF No. 29 at 3.)  In addition, plaintiff now claims that he was told that he would

26   receive "therapy," but did not receive it.  (ECF No. 29 at 4.)  He also now claims that he was in

27   "excruciating pain in his lower extremities, numbness in legs, and had urinary and bowel

28   incontinence."  (ECF No. 29 at 6.)  Plaintiff argues that deliberate indifference is shown when an

4

1    inmate is denied access to medical personnel capable of evaluating the need for treatment.  He

2    also argues that defendants have supervisory liability for the denial of his requests for MRIs and

3    administrative appeals, citing out of circuit authority.  (ECF No. 29 at 8.)

4            In reply, defendants argue that plaintiff's opposition demonstrates that plaintiff received

5    medical treatment, and their failure to provide the requested MRI constitutes a mere difference of

6    opinion, failing to rise to the high standard of deliberate indifference.  Defendants note that the

7    court is not allowed to consider plaintiff's exhibits on a motion to dismiss because, *inter alia*,

8    they were not a part of the complaint.  Defendants reiterate their position that defendants Fox and

9    Kim cannot be liable based on their role in denying plaintiff's administrative appeals.  Defendants

10   maintain that plaintiff's allegations fail to demonstrate that each defendant knew of, and failed to

11   prevent, an ongoing constitutional violation.  (ECF No. 30 at 4.)  With regard to supervisory

12   liability, defendants note that there is no vicarious liability under § 1983, and that plaintiff failed

13   to allege facts showing a causal link between defendants and a constitutional violation, only

14   providing conclusory allegations.  (ECF No. 30 at 6.)

15           As to qualified immunity, the parties agree that plaintiff has a clearly established right to

16   be protected from the deliberate indifference of prison staff.  (ECF No. 30 at 5.)  But defendants

17   argue that plaintiff failed to demonstrate that each defendant's conduct violated a constitutional

18   right.

19   V.  <u>Deliberate Indifference to Serious Medical Needs</u>

20           Where a prisoner's Eighth Amendment claims arise in the context of medical care, the

21   prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

22   indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  An Eighth

23   Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need and

24   the nature of the defendant's response to that need."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059

25   (9th Cir. 1991), <u>overruled on other grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th

26   Cir. 1997) (*en banc*).

27           A serious medical need exists if the failure to treat the condition could result in further

28   significant injury or the unnecessary and wanton infliction of pain.  <u>Jett v. Penner</u>, 439 F.3d 1091,

1096 (9th Cir. 2006).  To act with deliberate indifference, a prison official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus, a

defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  "It is enough

that the official acted or failed to act despite his knowledge of a substantial risk of harm."  Id. at

842.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

at 104-05.  To establish a claim of deliberate indifference arising from a delay in providing care, a

plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.

1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In

this regard, "[a] prisoner need not show his harm was substantial; however, such would provide

additional support for the inmate's claim that the defendant was deliberately indifferent to his

needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at

1060.  In addition, a physician need not fail to treat an inmate altogether in order to violate that

inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

1989) (per curiam).   A failure to competently treat a serious medical condition, even if some

treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.

Finally, a claim of medical malpractice or negligence is insufficient to make out a

violation of the Eighth Amendment.  Id. at 1059.  A difference of opinion between a prisoner and

prison medical staff as to the proper course of medical treatment does not give rise to a 1983

claim.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing

or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

rights."); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

VI.  Discussion

Plaintiff's amended complaint is not a model of clarity.  Defendants accurately point out

that there are inconsistencies between plaintiff's amended complaint and his original pleading.  In

6

1   addition, plaintiff has now added factual allegations in his unverified opposition that, if included

2   in a pleading, may have some impact on whether plaintiff can state a claim against a particular

3   defendant, or clarify whether his claims rise only to the level of negligence or medical

4   malpractice.  The Supreme Court has made clear that:

5   > To survive a motion to dismiss, a complaint must contain sufficient
   > factual matter, accepted as true, to state a claim to relief that is
6   > plausible on its face. A claim has facial plausibility when the
   > plaintiff pleads factual content that allows the court to draw the
7   > reasonable inference that the defendant is liable for the misconduct
   > alleged. The plausibility standard is not akin to a probability
8   > requirement, but it asks for more than a sheer possibility that a
   > defendant has acted unlawful. Where a complaint pleads facts that
9   > are merely consistent with a defendant's liability, it stops short of
   > the line between possibility and plausibility of entitlement to relief.
10  > (internal citations and quotations omitted).

11  Iqbal, 556 U.S. at 678.

12      Here, the court agrees that defendant Ogbodo's provision of pain medication on January

13  17, 2012, the first occasion on which plaintiff presented with back pain and fever, fails to

14  demonstrate deliberate indifference.  Plaintiff does not specifically identify Ogbodo as the

15  individual who provided the subsequent pain medication shots, or who referred plaintiff to Dr.

16  Wong.  It is also unclear whether defendant Obgodo, an RN, was aware of the signs and

17  symptoms of Valley Fever, and whether plaintiff presented to Obgodo with sufficient symptoms

18  at any point to suggest the possibility that plaintiff had contracted Valley Fever.  Thus, plaintiff

19  fails to allege sufficient facts demonstrating that Ogbodo was aware of a substantial risk of harm

20  to plaintiff yet failed to take steps to abate it.  Plaintiff should be granted leave to amend in the

21  event he can allege sufficient facts to demonstrate Ogbodo acted with deliberate indifference.

22      However, defendants' arguments concerning the defendants who were involved in the

23  administrative appeals process are unavailing.  Here, plaintiff is not raising a due process

24  challenge; rather, he is pursuing an Eighth Amendment violation based on these doctors' alleged

25  deliberate indifference to his serious medical needs.  Moreover, the record shows that plaintiff

26  was in need of additional medical care, so he sought such medical care through his administrative

27  appeals, rather than simply pursuing his administrative appeals to satisfy the exhaustion

28  requirements of 42 U.S.C. § 1997e(a).

7

1

2

3

4

5

6

7

8

> [This] distinction is important because an appeals coordinator does not cause or contribute to a completed constitutional violation that occurs in the past.  See George v. Smith, 507 F.3d 605, 609-610 (7th Cir. 2007) ("[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not").  However, if there is an ongoing constitutional violation and the appeals coordinator had the authority and opportunity to prevent the ongoing violation, a plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an impending violation and failed to prevent it.   See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisory official liable under Section 1983 if he or she knew of a violation and failed to act to prevent it).

9   Herrera v. Hall, 2010 WL 2791586, at * 4 (E.D. Cal. 2010).  As a prisoner, plaintiff "was not at

10  liberty to turn to just anyone for medical care."  Johnson v. Schwarzenegger, 366 F. App'x 767,

11  769 (9th Cir. 2010).  Presumably someone within the prison was responsible for ensuring that a

12  prisoner would receive the appropriate medical test, whether it be a blood test[1] or an MRI,

13  particularly where the prisoner complained of a host of symptoms that, when viewed together,

14  could suggest Valley Fever as a possible risk of harm.

15          Defendants are correct that plaintiff's new claim that defendants have supervisory liability

16  for the denial of his requests for MRIs and administrative appeals, relying on out of circuit

17  authority, is unavailing.  There is no respondeat superior liability, and each defendant is only

18  liable for his or her own misconduct.  Iqbal, 129 S. Ct. at 1948-49.  A supervisor may be held

19  liable for the constitutional violations of his or her subordinates only if he or she "participated in

20  or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v.

21  List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

22  Thus, plaintiff should not renew his supervisory claim in any amended pleading absent facts

23  demonstrating such connection.

24          The court is also persuaded that plaintiff fails to allege sufficient facts to demonstrate that

25  defendants Wong, Fox, and Kim acted with a sufficiently culpable state of mind.  Plaintiff's

26  allegations fail to demonstrate that each defendant was aware of a substantial risk of harm yet

27

28

---

[1] In Walker v. Andrews, 2011 WL 3945354 (E.D. Cal. Sept. 7, 2011), the prisoner's blood was drawn for a lab test to measure the coccidioidomycosis titer count.  Id. at *9.

1    failed to take steps to prevent it.  Plaintiff avers that DVI was and still is listed as one of the

2    prisons infected with "Valley Fever."  (ECF No. 15 at 7.)  But this fact, standing alone, is

3    insufficient to demonstrate that each defendant was aware of such list.  Plaintiff now claims that

4    the signs and symptoms of Valley Fever are printed in "facility [sic] and hospitals," (ECF No. 29

5    at 6), but he does not identify to which facility he refers, and therefore the court is unable to

6    ascertain whether any defendant may have been aware of such notices.  Plaintiff now claims that

7    African Americans and Filipinos are more susceptible to Valley Fever, but he fails to identify his

8    own ethnicity.  (ECF No. 29 at 6.)  Thus, it is unclear whether plaintiff was susceptible to Valley

9    Fever, or whether any of the defendants were aware of such a heightened risk if it existed.

10   Plaintiff does not state how long he was housed at DVI, or whether he was previously housed in

11   the southern part of the Central Valley known for an endemic risk of Valley Fever that is

12   referenced in the class action proceeding in the Fresno Division of this court.  Smith v.

13   Schwarzenegger, Case No. 1:14-cv-0060 LJO SAB (E.D. Cal.).

14           Further, plaintiff now claims that he "kept going man down," but he does not include

15   specific facts, such as dates for these incidents, and whether more than one occurred at DVI.

16   Plaintiff does not otherwise demonstrate that each defendant was aware that he had gone "man

17   down," or that he suffered numbness in his legs.  Plaintiff now claims that he was told that he

18   would receive "therapy," but he did not receive it.  (ECF No. 29 at 4.)  But plaintiff does not

19   identify the type of therapy he was to receive.  He now claims that he was in "excruciating pain in

20   his lower extremities, numbness in legs, and had urinary and bowel incontinence," (ECF No. 29

21   at 6), but he does not indicate whether he presented at DVI with all of these symptoms, or

22   whether these were symptoms he presented with once he transferred to SVSP.  In order to

23   demonstrate each defendant's subjective awareness, plaintiff must allege specific facts showing

24   that each defendant was aware of a substantial risk of harm yet failed to take steps to prevent it.

25           Defendants also argue that plaintiff attempts to impose constitutional liability based on the

26   discovery of an abscess on his spinal cord and the fact that he was diagnosed with Valley Fever

27   by the medical staff at SVSP, but defendants contend that the extent or severity of his injury does

28   not determine the subjective component of the deliberate indifference standard.  (ECF No. 21-1 at

9

5.)  While plaintiff's harm does not demonstrate that each defendant acted with a culpable state of

mind, the alleged substantial harm does support his claim that the almost four month delay was

harmful.  See Lancaster v. Aung, 2012 WL 1355762 (N.D. Cal. April 18, 2012) (inmate housed at

the Correctional Training Facility at Soledad in Monterey County challenged 23 day delay in

diagnosis and treatment for Valley Fever).

Liberally construing plaintiff's allegations, plaintiff essentially argues that while housed at

DVI, where he claims Valley Fever is a known risk, defendants delayed providing plaintiff proper

medical treatment for almost four months because:  he continued to present with worsening

symptoms of back pain, fever, chills; "it is documented that plaintiff went man down (emergency

call) due to numbness in both legs, and excruciating lower back pain" (ECF No. 15 at 7); and the

February 24, 2012 x-ray should have reflected bony destruction at the L5-S1 level because the

May 30, 2012 MRI and CT-scan provided at Salinas Valley State Prison revealed "a large

epidural mass at the L5-S1 level, with significant bony destruction confirmed," and "severe

compromise of his nerves," evidenced by "numbness in both legs."  (ECF No. 15 at 6.)  While the

x-ray may not have shown the epidural mass, plaintiff argues that, at a minimum, the x-ray should

have reflected some evidence of "bony destruction," inasmuch as a little over three months later

he was diagnosed with significant bony destruction.  (ECF No. 15 at 6.)  Plaintiff further contends

the x-rays show "solids, such as bone cavity."  (ECF No. 15 at 7.)[2]

Taking plaintiff's allegations as true, the court cannot find that it appears beyond doubt

that plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

Plaintiff may be able to amend his pleading to demonstrate that at least one of these defendants

---

[2]  It now appears that plaintiff presented on February 15, 2012, with some sort of respiratory
complaint because he claims he was prescribed an inhaler on February 15, 2012, despite having
no history of asthma.  (ECF No. 29 at 3.)  However, although plaintiff provided exhibits with his
opposition, such exhibits cannot be considered on a motion to dismiss because they were not
included with his pleading, and plaintiff failed to demonstrate that any facts contained in such
unauthenticated records are subject to judicial notice by the court.  See Fed. R. Evid. 201; Hurd v.
Garcia, 454 F. Supp. 2d 1032, 1054-55 (S.D. Cal. 2006) (burden on party requesting judicial
notice to persuade judge "that the fact is a proper matter for judicial notice") (internal citation
omitted); Walker v. Woodford, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (holding that the
plaintiff's prison medical records are not matters of public record subject to judicial notice), aff'd
in part, 393 F. App'x 513 (9th Cir. 2010).

1    was aware of a substantial risk of harm to plaintiff, yet failed to take steps to prevent it.  Thus,

2    although defendants' motion to dismiss is granted, plaintiff is granted leave to file a second

3    amended complaint.

4         Finally, defendants contend that they are entitled to qualified immunity.  Plaintiff did not

5    address this argument.

6         "The doctrine of qualified immunity protects government officials 'from liability for civil

7    damages insofar as their conduct does not violate clearly established statutory or constitutional

8    rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223,

9    231, 129 S. Ct. 808 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727

10   (1982)).  In determining whether an officer is entitled to qualified immunity, the court must

11   decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right;

12   and (2) whether that right was clearly established at the time of the officer's alleged misconduct.

13   Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Courts are

14   "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

15   immunity analysis should be addressed first in light of the circumstances in the particular case at

16   hand."  Pearson, 555 U.S. at 236.  In resolving these issues, the court must view the evidence

17   in the light most favorable to plaintiff and resolve all material factual disputes in favor of

18   plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

19        Saucier discussed qualified immunity in the context of a motion for summary judgment,

20   sometimes a better vehicle for resolving qualified immunity issues.  See Kwai Fun Wong v.

21   United States, 373 F.3d 952, 957 (9th Cir. 2004) ("while government officials have the right . . .

22   to raise and immediately appeal the qualified immunity defense on a motion to dismiss, the

23   exercise of that authority is not a wise choice in every case.")  When the defense is raised in a

24   motion to dismiss, the Court must decide "whether the facts alleged in the complaint, assumed to

25   be true, yield the conclusion that the defendant is entitled to immunity."  Butler v. San Diego

26   District Attorneys Office, 370 F.3d 956, 962-63 (9th Cir. 2004).

27        Because plaintiff is granted leave to amend, the court defers ruling on the issue of

28   qualified immunity, and will deny the motion on such grounds without prejudice.  Although

1   defendants are not entitled to qualified immunity at this stage, the qualified immunity defense

2   may be raised at a later time.

3        Accordingly, defendants' motion to dismiss is granted on the grounds that plaintiff failed

4   to state a claim for deliberate indifference, but denied without prejudice on qualified immunity

5   grounds.  Plaintiff is granted leave to amend.

6   VII.  Leave to Amend

7        Plaintiff is cautioned that in his second amended complaint, he should only include an

8   individual as a defendant if he can allege facts demonstrating that the individual was aware of a

9   substantial risk of harm to plaintiff yet failed to prevent it.

10       If plaintiff chooses to file a second amended complaint, he is informed that the court

11  cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local

12  Rule 220 requires that an amended complaint be complete in itself without reference to any prior

13  pleading.  This requirement exists because, as a general rule, an amended complaint supersedes

14  the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a

15  second amended complaint, the original complaint no longer serves any function in the case.

16  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

17  of each defendant must be sufficiently alleged.   Plaintiff's second amended complaint shall

18  comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and

19  the Local Rules of Practice.  The second amended complaint must also bear the docket number

20  assigned to this case and must be labeled "Second Amended Complaint."

21  VII.  Motion for Appointment of Counsel

22       Plaintiff requests appointment of counsel.  (ECF No. 15.)  District courts lack authority to

23  require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States

24  Dist. Court, 490 U.S. 296, 298, 109 S. Ct. 1814 (1989).  In exceptional circumstances, the court

25  may request an attorney to voluntarily to represent such a plaintiff. See 28 U.S.C. § 1915(e)(1);

26  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332,

27  1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court

28  must consider the likelihood of success on the merits as well as the ability of the plaintiff to

articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).  Having considered those factors, the undersigned concludes that counsel should be provided, if only for the limited purpose of drafting the second amended complaint.  Accordingly, the court will grant plaintiff's motion and refer this case to Sujean Park, the court's ADR & Pro Bono Coordinator to attempt to locate pro bono counsel to represent plaintiff in these proceedings.

IX.  Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for appointment of counsel (ECF No. 15) is granted.  This case is referred to Sujean Park, the court's ADR & Pro Bono Coordinator to attempt to locate pro bono counsel to represent plaintiff in these proceedings.

2.  If an attorney can be found to represent plaintiff, that attorney shall be appointed as counsel for plaintiff, if only for the limited purpose of drafting the second amended complaint.

3.  Defendants' motion to dismiss (ECF No. 21) is partially granted, but plaintiff is granted leave to amend.

4.  Within sixty days from the date of an order appointing counsel, plaintiff shall file a second amended complaint in compliance with this order.

Dated:  February 4, 2016

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/boyc1743.mtd

13