UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNELL BOYCE, | No. 2:14-cv-1743 KJM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MICHAEL FOX, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding through counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. On November 3, 2017, defendant Wong, the sole remaining defendant,[1] filed a motion for summary judgment. As discussed below, the motion should be granted on the grounds that plaintiff failed to exhaust his administrative remedies.

II. Plaintiff's Operative Pleading

In the unverified second amended complaint filed by counsel, plaintiff alleges he is an African American inmate housed at Deuel Vocational Institute ("DVI") in August of 2011. Plaintiff alleges he began suffering flu-like symptoms in early January of 2012, including a fever

---

[1] Defendants Fox, Kim and Ogbodo were dismissed on March 7, 2017.

1

and drastic weight loss: reducing from 207 to 130 pounds in the span of about a week. (ECF No. 37 at 5.) Plaintiff also experienced severe back pains, which prevented him from laying down, as well as numbness in his legs, impaired mobility, and severe headaches. Plaintiff was allegedly not involved in any physical altercation or accident, slip or fall, that would have explained his symptoms. Plaintiff began requesting medical treatment on or about January 4, 2012. In response to plaintiff's complaints, Dr. Wong prescribed acetaminophen with codeine phosphate (Tylenol), guaifenesin-dextromethorphan (Robitussin), and sunatriptan (Migraine medication). On or about January 17, 2012, plaintiff went "man down," and RN Ogbodo gave plaintiff a hydrocodone shot for his excruciating pain. The pain returned after 11 hours, and RN Ogbodo gave plaintiff two more hydrocodone shots. Plaintiff claims that the pain and previous symptoms returned almost immediately. Plaintiff alleges that his relationship with Dr. Wong was "rocky and harried," and that Dr. Wong became defensive when plaintiff demanded more rigorous testing, plaintiff arguing that his symptoms were shocking based on his prior great physical shape and his experience and training as a physical therapist. Dr. Wong explained that plaintiff's physical therapy experience could not equate to Dr. Wong's qualification as a medical doctor, and that the prescribed medication and treatment should suffice. (ECF No. 37 at 6.)

Dr. Wong allegedly did not order an x-ray of plaintiff's lumbar spine until February 24, 2012. Dr. Wong opined that the x-ray results showed plaintiff's spine was in a healthy condition, despite plaintiff's objections and pleadings. Plaintiff attempted to obtain further medical tests through the appeals process, and was provided an x-ray of his hip.

Plaintiff went "man down" again on May 1, 2012. Plaintiff states that a correctional officer and two other DVI personnel (likely staff nurses from the medical ward) approached plaintiff, but plaintiff claims the nurses refused to transport plaintiff to medical, refused to treat plaintiff in his cell because he was seen by a physician earlier that day, and claimed plaintiff was faking his injury so that he could be given more prescription drugs. (ECF No. 37 at 6.)[2] Plaintiff

---

[2] Plaintiff refers the reader to his Exhibit D, which is his administrative appeal in which he claimed "medical" refused to pick him up, and states that the "lady in charge in main medical thinks it's about pills." (ECF No. 37 at 55.) It is unclear who was the "lady in charge," but the appeal response identifies RN Ogbodo as the nurse who saw plaintiff "as" he went "man down"

allegedly remained on the floor of his cell, missing chow, through the night until the feeling in his legs returned.

On May 16, 2012, plaintiff was transferred to Salinas Valley State Prison ("SVSP"). On May 24, 2012, plaintiff again went "man down," and allegedly experienced five days of lower back extremity paralysis, including an inability to walk, loss of sensation from the waist down, and urinary and fecal incontinence. On May 30, 2012, plaintiff was hospitalized and provided an MRI of his lumbar spine, which showed a large epidural mass at the L5-S1 level with significant bone destruction, and significant bony destruction confirmed both on MRI and CT scanning of S1. The spine deterioration was diagnosed as advanced stages of coccidioidomycosis. On May 31, 2012, plaintiff underwent surgery at Stanford University Medical Center where his spine was treated and supported with pedicle screws. On June 28, 2012, plaintiff underwent a second surgery, involving decompression and debridement of the operated area. Medical staff at Stanford opined that plaintiff would be unable to lift more than 25 pounds, requiring the assistance of a cane for the rest of his life, and is hyper-vulnerable to paralysis if his body experiences a traumatic blow. (ECF No. 37 at 7.)

Specifically, plaintiff alleges that defendant Dr. Wong, as plaintiff's primary care physician, was aware that plaintiff lost close to 80 pounds in one week, was experiencing excruciating back pain, had numbness in his legs, had a fever, and had experienced no blunt-force trauma to explain such symptoms and was historically an extremely healthy individual. Plaintiff contends that defendant Dr. Wong was deliberately indifferent to plaintiff's serious medical needs, and failed to order blood tests, an MRI, or refer plaintiff to a specialist, to determine the etiology of plaintiff's drastic weight loss, and continuous complaints of leg numbness and excruciating back pain.

Plaintiff also provides a patient education form, dated August 2013, that identifies the following symptoms of Valley Fever: fever, cough, tiredness, headaches, rash, joint/muscle aches, night sweats, weight loss/lack of appetite, pneumonia. (ECF No. 37 at 13.)

---

on May 1, 2012. (ECF No. 37 at 58.)

3

III. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

IV. <u>Undisputed Facts</u> ("UDF")[3]

1. Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") between January 1, 2012, and June 14, 2014.

2. Between January 1, 2012, and May 16, 2012, plaintiff was housed at Deuel Vocational Institute ("DVI") in Tracy, California.

3. During the period plaintiff was housed at DVI, defendant Dr. Wong was employed by the CDCR at DVI as a medical doctor.

4. During the relevant period, plaintiff submitted two health care appeals that were accepted and adjudicated at the First and/or Second Levels of review.

5. In the first appeal, log number DVI-HC-12040415, plaintiff complained about the treatment he received from a Registered Nurse (RN) at DVI after he went "man down." (ECF Nos. 37 at 55; 55-4 at 7.) Plaintiff requested proper medical treatment for his back and for action to be taken against the "lady" in-charge. In this appeal, plaintiff did not name and/or identify Dr. Wong, and did not make allegations against Dr. Wong or any other medical doctors at DVI. (Lewis Decl. ¶ 10, Ex. 2.)

6. Plaintiff's first appeal, log number DVI-HC-12040415 was accepted at the First Level of review and, on May 25, 2012, was partially granted in that plaintiff's allegations were investigated.

7. In the second appeal, log number DVI-HC-12040144, plaintiff asked for a follow-up appointment for his back pain and a referral to a specialist. (ECF No. 55-4 at 11-12.) In that appeal, plaintiff did not name and/or identify Dr. Wong, and did not make any allegations against Dr. Wong or any other medical doctors at DVI.

8. Plaintiff's second appeal, log number DVI-HC-12040144 was originally accepted and adjudicated at the First Level of review on February 21, 2012. (ECF No. 55-4 at 11.) On April 12, 2012, this health care appeal was screened-out at the Second-Level of Review under California Code of Regulations ("CCR") Title 15, Section 3084.6(b)(4) because plaintiff's appeal

---

[3] Plaintiff, represented by counsel, and defendant did not dispute facts 1-17. (ECF No. 56-1.)

contained "threatening, obscene, demeaning, or abusive language."[4]  (ECF No. 55-4 at 10.)

    9.  During the relevant period, plaintiff did not receive a Third-Level decision on DVI-HC-12040415, DVI-HC-12040144, or on any other health care appeal that he submitted.

    10.  Plaintiff submitted five inmate healthcare appeals that were screened-out and/or cancelled at the First Level of review at DVI, California Mens' Colony (CMC), and the California State Prison, Los Angeles County (CSP-LAC).

    11.  In appeal, log number DVI-HC-12040414, plaintiff re-submitted his request for the medical treatment he made in DVI-HC-12040144.  (ECF No. 55-4 at 17.)  That appeal was screened-out and cancelled under CCR Title 15, Section 3084.6(c)(2) on May 4, 2012, because it was a duplicate of DVI-HC-12040144.  (ECF No. 55-4 at 16.)

    12.  In appeal, log number DVI-HC-12040339, plaintiff re-submitted his request for the medical treatment he made in DVI-HC-12040144.  (ECF No. 55-4 at 21.)  That appeal was screened-out and cancelled under CCR Title 15, Section 3084.6(c)(2) on April 12, 2012, because it was a duplicate of DVI-HC-12040144.  (ECF No. 55-4 at 20.)

    13.  In appeal, log number CMC-SC-12000449, plaintiff made allegations against the medical staff at CMC.  That appeal was screened-out and cancelled under CCR Title 15, Sections 3084.6(b)(6) (general allegations) and 3084.6(b)(13) (incomplete appeal), on September 17, 2012.

    14.  In appeal, log number CMC-SC-12000450, plaintiff made allegations against the medical staff at CMC.  That appeal was screened-out and cancelled under CCR Title 15, Sections 3084.6(b)(3) (excessive filings), 3084.6(b)(6) (general allegations), and 3084.6(b)(13) (incomplete appeal), on September 17, 2012.

    15.  On January 8, 2014, in appeal, log number LAC-HC-14047873, plaintiff alleged that, between January 17, 2012, and April 5, 2012, staff at DVI were deliberately indifferent to his severe back pain and for assuming he was faking his pain to get drugs.  (ECF No. 55-4 at 31-33.)  Plaintiff alleged that Dr. Wong concluded that his x-ray results were within normal limits and prescribed him Ibuprofen for pain.  Plaintiff also alleged that Dr. Wong denied his requests for

---

[4] Profanity was used in plaintiff's request for second level review.  (ECF No. 55-4 at 12.)

7

therapy and to be seen by a specialist. That appeal was screened-out on February 28, 2014, under CCR Title 15, Sections 3084.6(b)(6) (general allegations) and 3084.6(b)(14) (not on approved forms).[5] (ECF No. 55-4 at 36.) On April 4, 2014, this health-care appeal was screened-out and cancelled a second time under CCR Title 15, Sections 3084.6(b)(6) (general allegations) and 3084.6(b)(14) (not on approved forms) on April 4, 2014. (ECF No. 55-4 at 28.)

16. Other than the above-mentioned appeals, plaintiff did not submit any other health care appeals that were accepted and adjudicated at the First and/or Second Levels of review.

17. Plaintiff did not submit a health care appeal alleging that any of his appeals were improperly screened-out and/or cancelled by an Office of Health Care Appeals, or by any individual Appeals Coordinator.

18.[6] On or about May 16, 2012, plaintiff was transferred from DVI to SVSP. (ECF No. 55-4 at 5.)

19. Plaintiff was hospitalized on May 30, 2012, and on May 31, 2012, had surgery at Stanford Medical Center and housed outside of CDCR facilities: "L5 and S1 laminectomy with evacuation of epidural abscess." (ECF No. 37 at 60-62.) Plaintiff was released on June 7, 2017, and the discharge summary noted he was stable; his physical activity was restricted as follows:

> Activity: Take it easy, you are recovering from surgery. You must avoid lifting greater than 5 pounds and avoid any strenuous activity. Also avoid twisting motion or bending at waist. Continue to try to perform some activity as you can tolerate. Don't be afraid to ask for help when you need it. Be sure to wear your brace at all times when

---

[5] Specifically, the appeal was rejected for the following reasons: (1) the appeal made a general allegation, failing to state facts or specify an act or decision consistent with the allegation; (2) because plaintiff's concerns regarded DVI, "[w]e cannot answer for another institution; "I am also unclear as to why this green appeal already has a log number on it"; and (3) not on approved forms: Green CDCR 602 appeal forms are for nonmedical issues; Pink CDCR 602-HC forms are for medical issues. (ECF No. 55-4 at 36.)

[6] Plaintiff included three additional proposed undisputed facts: that plaintiff was never directed on how to continue the appeal process after his transfer away from DVI; plaintiff was hospitalized and had extensive surgery at Stanford, outside CDCR facilities; and CSP-LAC officials explained to plaintiff that they were unable to "answer" for another institution yet provided no direction on how to submit a complaint against another institution's official. (ECF No. 56-1 at 5.) Defendant objected to these additional "undisputed facts," arguing such facts are not material to the issue of whether administrative remedies were available to plaintiff at DVI. The court includes additional undisputed facts 18-21 because they are relevant to plaintiff's arguments.

8

|     |                                                                                                      |
| --- | ---------------------------------------------------------------------------------------------------- |
| 1   | out of bed.                                                                                          |
| 2   | (ECF No. 37 at 64.)[7]                                                                               |

20. On January 8, 2014, plaintiff submitted appeal LAC-B-14-00175[8] which was received on January 10, 2014, and marked "CSP-LAC HC." (ECF No. 55-4 at 31.) Plaintiff alleged that "appellees" acted with deliberate indifference to plaintiff's serious medical needs because on or about January 17, 2012, plaintiff was "stricken with severe paralyzing back pain causing him to call 'man down.'" (Id.) "Appellees" assumed plaintiff was "faking his pain level." (Id.) Plaintiff sought money damages and lifetime medical treatment. (Id.) Plaintiff also complained about his medical treatment in early 2012, and claimed that before he could correct his appeal containing profanity, he was diagnosed with Valley Fever and admitted to the hospital for surgery. (ECF No. 55-4 at 33.)

21. On March 9, 2014, plaintiff wrote a letter to P. Galbraith, Health Care Appeals Coordinator, CSP-LAC, re appeal LAC HC 14047873. (ECF No. 55-4 at 35.) In this letter, plaintiff disagreed with the February 28, 2014 rejection of his appeal, and asked to incorporate the Green CDCR 602 appeal form into the attached Pink CDCR 602-HC and process the appeal. (Id.)

V. Exhaustion of Administrative Remedies

    A. Exhaustion Standards

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner challenging prison conditions to exhaust available administrative remedies before filing

---

[7] In his unverified amended complaint, plaintiff states he had a second surgery on June 28, 2012, undergoing decompression and debridement of the operated area. (Id.) Plaintiff did not provide a medical record documenting such surgery. The discharge summary from his first surgery notes that it was "likely further debridement of the patient would be required vis a staged anterior approach with at time a posterior stabilization. The patient wished to proceed with surgical intervention." (ECF No. 37 at 60.) Such reference suggests the second surgery did occur, despite the lack of evidence confirming same.

[8] Although this appeal bears the handwritten appeal number LAC-B-14-00175, as well as received stamps by the Appeals Office, it does not reflect that the appeal was accepted or addressed by the appeals office. (ECF No. 55-4 at 31.) This appeal LAC-B-14-00175 may be the "green appeal" referred to in the February 28, 2014 rejection letter attributed to appeal LAC HC 14047873. (ECF No. 55-4 at 36).

9

suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a precondition to suit; exhaustion during the pendency of the litigation is insufficient. McKinney, 311 F.3d at 1199-1200. This requirement promotes the PLRA's goal of efficiency by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an administrative record that is helpful to the court.'" Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. These rules are defined by the prison grievance process itself, not by the PLRA. Jones v. Bock, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. Harvey, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b).

The State of California provides its inmates and parolees the right to administratively appeal "'any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'" Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also

Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[9] An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" Id. (quoting Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

---

[9] On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in plaintiff's complaint. Whatever the former requirements may have been, in California since January 28, 2011, the operative regulation set forth above requires specificity in administrative appeals.

11

'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. Albino, 747 F.3d at 1172. In most circumstances, the appropriate procedural mechanism is a motion for summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. Albino, 747 F.3d at 1166.

B. Discussion

1. Did plaintiff exhaust?

Here, it is undisputed that (a) CDCR has a grievance process; and (b) plaintiff did not receive a third level review on the merits of his claims. Such undisputed facts establish that plaintiff did not exhaust his administrative remedies prior to filing this action. Thus, the burden shifts to plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

2. Were the remedies available?

The Supreme Court has reiterated that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross, 136 S. Ct. at 1858. Therefore, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id., quoting Booth, 532 U.S. at 737-38. In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use'

12

because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079. See also Reyes v. Smith, 810 F.3d 654, 658, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process, and rendered a decision on the merits of the grievance at each step of the process); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); Sapp, 623 F.3d at 823 (when an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as unavailable); Nunez, 591 F.3d at 1224-26 (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d at 940 (prisoner not required to proceed to third level where appeal granted at second level and no further relief was available).

### A. Were Administrative Remedies Available at DVI?

The undisputed facts show that administrative remedies were available to plaintiff while he was housed at DVI from January 1 through May 16, 2012, because plaintiff filed two health care appeals that were accepted; one was adjudicated through the second level of review, the other was properly rejected. In addition, while he was housed at DVI, plaintiff filed two additional appeals attempting to appeal the allegations screened out for inappropriate statements. One appeal was cancelled on April 12, 2012, leaving plaintiff time to correct and resubmit his second appeal before he transferred on May 16, 2012. Moreover, plaintiff was instructed to "line out the inappropriate statements, initial and resubmit your appeal to the Health Care Appeals

Office for continued processing," and informed that "[t]his screening action may not be appealed unless you allege that the above reason(s) is inaccurate." (ECF No. 55-4 at 10.) In his third and fourth appeals, plaintiff did not challenge the reason the second appeal was rejected, but simply duplicated his allegations from the second appeal. Plaintiff does not contend that either of these appeals were improperly screened out.

Rather, plaintiff argues that his administrative remedies at DVI were not capable of use because, despite his consistent requests for medical treatment "clearly not being provided by his primary care physician, Dr. Wong," there was no independent review of plaintiff's symptoms because Dr. Wong was the doctor who reviewed plaintiff's appeal. (ECF No. 56 at 5.) Allegedly because Dr. Wong was the doctor providing plaintiff's care, "Dr. Wong would not opine that his previous findings and determinations were inadequate." (Id.)

However, as argued by defendant, plaintiff was only required to submit a health care appeal that reasonably identified Dr. Wong and plaintiff's allegations against the doctor, through all three levels of the appeals review process before filing the instant action. Dr. Wong's involvement in the appeal review process does not excuse plaintiff from exhausting his administrative remedies. Plaintiff's citation to Ross, 136 S. Ct. at 1859, does not support such an argument, and plaintiff provides no other legal authority supporting such an excuse from the exhaustion requirement. (ECF No. 56 at 5.)

### B. Would the First Two Appeals Exhaust the Instant Claims?

It is undisputed that plaintiff's first two appeals did not name Dr. Wong or complain about the medical treatment provided by Dr. Wong or any other doctor at DVI. (UDF 5, 7.)

In the first appeal, log number DVI-HC-12040415, it is undisputed that plaintiff complained about the treatment he received from an RN at DVI after he went "man down" on May 1, 2012, and for action to be taken against the "lady" in charge. (UDF 5.) Specifically, plaintiff explained his issue:

> I [went] man down today. Medical refused to pick me up.
>
> I have a pinched nerve in my lower back. My right leg went out on me after using the bathroom.

> The action that I want taken is the lady in charge in main medical thinks it[']s about pills. I can care less about meds I want my back fixed.

(ECF No. 37 at 55.) Nothing in this appeal suggests that a doctor at DVI was not providing plaintiff with adequate medical care. Rather, the appeal addresses what appears to be an isolated incident where the RN refused to take plaintiff to medical for an evaluation. Although plaintiff states he wants his back fixed, he says it in the context of the events of May 1, 2012, and there is no indication that Dr. Wong or another doctor were not adequately treating plaintiff's back. Moreover, in the first level response, the reviewer evaluated the RN's response to plaintiff on May 1, 2012, and determined there was no evidence that plaintiff's medical concerns were not appropriately addressed by her. (ECF No. 55-4 at 6.) In addition, Dr. Wong saw plaintiff to address the appeal issues, and documented that plaintiff was "upset with the RN as she refused to pick [plaintiff] up when [he] went man-down," but that subsequently, on May 15, 2012, plaintiff was observed walking around and moving without difficulty. (Id.) Thus, it appears that the appeals reviewer did not address plaintiff's allegations as a complaint with the medical treatment provided by Dr. Wong or another doctor. Based on all of these facts, the undersigned cannot find that plaintiff's first appeal exhausts the claims raised against Dr. Wong in this action.

In plaintiff's second appeal, log number DVI-HC-12040144, it is undisputed that plaintiff sought a follow-up appointment for his back pain and referral to a specialist. (UDF 7.) Specifically, plaintiff wrote:

> I've been putting in numerous medical slips complaining about my back pain! It's been over a month and a 1/2 since then and still no medical specialist has seen me at all whatsoever. I would like to see a specialist to tell me what's wrong with my back, meaning a therapist. Is there any way possible I could be put into some type of therapy. The pain is excruciating. (ECF No. 55-4 at 11.)
>
> I can't say if I need a chrono at this point. It's just totally wrong for someone to have to endure this pain that I go through every day and night. I truly need to see someone asap! (Id.)

(ECF No. 55-4 at 11.)

Exhaustion of administrative remedies may be deemed complete, despite the inmate's failure to comply with a procedural rule, if prison officials ignore the procedural problem and

render a decision on the merits of the grievance at each available step of the administrative process. Reyes, 810 F.3d at 658; e.g., id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process); Treglia v. Kernan, 2013 WL 4427253, at *4 (N.D. Cal. Aug. 15, 2013) (relying on pre-2011 CDCR regulation, held that failure to name warden in the grievance did not equate to a failure to properly exhaust where Director's level response concluded that the issue had been resolved, raising an implication that prisoner received all the relief he could receive from the grievance process.)[10]

Here, although plaintiff does not identify Dr. Wong or another doctor by name or profession, plaintiff's second appeal, log number DVI-HC-12040144, makes clear that he was not receiving adequate care for his back pain, and only a doctor could prescribe pain medication. In the first level response, Dr. Fox discussed all of the treatment that Dr. Wong had provided, and Dr. Fox does not identify any other physician who provided care to plaintiff. (ECF No. 55-4 at 13-14.) For these reasons, the court finds that plaintiff's second appeal put prison officials on notice of plaintiff's concerns about the treatment for his back by Dr. Wong, who appeared to be plaintiff's primary care physician at that time. Therefore, if plaintiff pursued his second appeal through the third level of review, the second appeal would exhaust the instant claims against Dr. Wong.

However, plaintiff failed to timely correct the errors on which the rejection of his second appeal was based. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones, 549 U.S. 199 at 217-18. On April 12, 2012, plaintiff was instructed to "line out the inappropriate statements, initial and resubmit your appeal to the Health Care Appeals Office for continued processing," and warned that the rejection could not be appealed. (ECF No. 55-4 at 10.) At the bottom of the rejection, plaintiff was informed he had thirty days to resubmit his appeal. (Id.) "An appeal that is rejected pursuant to subsection

---

[10] But see Blacher v. Johnson, 2014 WL 790910, at *4 (E.D. Cal. Feb. 26, 2014) (dismissing action for failure to exhaust because defendant was not named in the appeal).

§ 3084.6(b) may later be accepted if the reason noted for the rejection is corrected and the appeal is returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection." Cal. Code Regs. tit. 15, § 3084.6. Thus, plaintiff was required to resubmit his corrected second appeal on or before May 12, 2012, prior to his May 16, 2012 transfer, in order to properly exhaust his second appeal.

Instead, plaintiff chose to file two new appeals, despite specific instructions to the contrary. Therefore, plaintiff's failure to timely correct the second appeal was not due to his transfer or to his surgery, but rather due to his decision to file new appeals rather than to resubmit a corrected second appeal as instructed. Plaintiff's failure to timely correct this second appeal on or before May 12, 2012, means that plaintiff did not properly exhaust his second appeal, DVI HC 12040144. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91 (footnote omitted).

### C. Impact of Subsequent Cancelled Appeals While at DVI

The cancellation of plaintiff's appeal DVI HC 12040339 does not extend the deadline to file his second appeal because such appeal was improperly filed, and properly screened out. Appeal DVI HC 12040339 was received and cancelled on April 12, 2012, because it was a duplicate of his second appeal (DVI HC 12040144). (ECF No. 55-4 at 3, 20.) Plaintiff was informed that once an appeal has been cancelled, that appeal may not be resubmitted. (Id.) This cancellation was dated the same day as plaintiff's second appeal was rejected, providing plaintiff a reminder that he must resubmit his second appeal within thirty days.

Despite being told that once an appeal is cancelled the appeal may not be resubmitted, plaintiff filed appeal DVI HC 12040414. On May 4, 2012, such appeal was cancelled, and cannot extend the deadline to file his second appeal because appeal DVI HC 12040414 was also improperly filed and properly screened out. This fourth appeal was also found to be a duplicate of his second appeal DVI HC 12040144 and was cancelled. (ECF No. 55-4 at 16.) Moreover, plaintiff was advised that he did not need to file another appeal, but needed to follow the

directions provided on April 12, 2012. (Id.) On May 4, 2012, plaintiff still had eight days left to resubmit his corrected second appeal DVI HC 12040144, yet failed to do so.

Plaintiff does not explain why he failed to resubmit his corrected second appeal within the thirty-day deadline, or why he chose to file two new appeals instead of following the instructions in the rejection notice. In addition, after the rejection issued, plaintiff was able to file two more appeals while housed at DVI, demonstrating that he was able to file a corrected second appeal within the thirty-day time frame, and his physical ailments would not have prevented him from doing so.

Therefore, because plaintiff failed to correct and re-submit his second appeal within the thirty-day time limit, he failed to properly exhaust his second appeal. The second appeal was properly rejected, and cannot serve to exhaust plaintiff's claims raised herein.

### C. Because Remedies Available at DVI, Plaintiff's Arguments Fail

Because the undersigned finds that remedies were available while plaintiff was housed at DVI, yet plaintiff failed to timely submit a corrected second appeal, what took place after plaintiff was transferred away from DVI is not material to the instant motion. While plaintiff was housed at DVI, there was no "dead end;" plaintiff identifies no officer unable or consistently unwilling to provide any relief. The grievance process was not opaque, as evidenced by plaintiff filing multiple appeals, and which demonstrates that prison staff were not impeding his ability to file such a grievance. Indeed, plaintiff does not argue that any of his appeals were improperly screened out. Because the first appeal did not exhaust plaintiff's claims against Dr. Wong, and plaintiff failed to timely resubmit a corrected second appeal, which was properly rejected, defendant's motion for summary judgment should be granted.

### D. Did Plaintiff's Surgery Prevent Access to Grievance Process?

Plaintiff argues that he was unable to exhaust his claims because he was hospitalized, requiring extensive spinal surgery, and that after he recovered, he filed a grievance against DVI officials which was rejected by prison officials at CSP-LAC because, *inter alia*, CSP-LAC "cannot answer for another institution." (ECF No. 55-4 at 36.) Plaintiff cites Days v. Johnson,
////

322 F.3d 863, 868 (5th Cir. 2003),[11] where the court deemed administrative remedies unavailable when the untimely grievance was due to a physical injury, and the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance.

The Fifth Circuit expressly limited its holding to the narrow facts of that case. Id.

Here, plaintiff had surgery on May 31, 2012, and was released from the hospital on June 7, 2012, yet he did not sign his grievance LAC-B 14-00175 until January 8, 2014, over a year and seven months after his release. In Days, the prisoner sustained multiple hand fractures, and required extensive medical treatment, including reconstructive surgery, all of which rendered him unable to write a grievance until his hand healed. Id. at 865, 866. Here, plaintiff provides no factual support to demonstrate he was unable to file a grievance for over a year and a half after his surgery. While it appears plaintiff's surgery was extensive, the discharge summary does not reflect that he was confined to a wheelchair or was unable to walk or write; he was provided with a back brace, admonished not to bend and twist, and encouraged to try to perform some activity. Plaintiff does not explain how the surgery and his subsequent recovery prevented him from filing a grievance for such a lengthy period. Even assuming, *arguendo*, his recovery was further delayed by the second surgery, plaintiff fails to explain how his recovery prevented him from earlier filing an appeal as to Dr. Wong.

### E. Did Subsequent Treatment Render Further Exhaustion Unnecessary?

Finally, plaintiff argues that relief was unavailable through the appeal process following his transfer. (ECF No. 56 at 4.) Plaintiff notes that CDCR requires that "for each subsequent level of review" the inmate shall state "in detail, the reason(s) for his or her dissatisfaction with or disagreement with the reviewer's response." CDCR Operational Manual § 54100.13. In the first level response to plaintiff's first appeal DVI HC 12040415, plaintiff was directed to "pursue any further medical concerns or issues" with the medical staff at SVSP. Plaintiff argues that once he was adequately treated at SVSP, there was nothing left for plaintiff to dispute. (ECF No. 56 at 4.)

---

[11] Subsequently, Days was overruled by implication on other grounds by Jones, 549 U.S. at 216.

Because the undersigned finds that plaintiff's first appeal did not exhaust plaintiff's allegations against Dr. Wong in this suit, the status of plaintiff's first appeal after plaintiff was transferred is not material to the pending motion, and the undersigned need not address the legal authorities relied upon by plaintiff to support this argument. (ECF No. 56 at 4.)

VI. Conclusion

Accordingly, because administrative remedies were available to plaintiff while he was housed at DVI, and he failed to timely resubmit a corrected second appeal as instructed, defendant's motion for summary judgment should be granted, and plaintiff's claims against defendant Dr. Wong be dismissed without prejudice because plaintiff failed to exhaust administrative remedies prior to filing the instant action.

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 55) be granted; and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 15, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/boyc1743.msj.fte